IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Christine M. Arguello

Civil Action No. 20-cv-01548-CMA

D.R.,

    Plaintiff,

v.

KILOLO KIJAKAZI, acting Commissioner of Social Security,[1]

    Defendant.

**ORDER AFFIRMING DENIAL OF DISABILITY INSURANCE BENEFITS**

This matter is before the Court on review of the Social Security Commissioner's decision denying Plaintiff D.R.'s application for disability insurance benefits. Jurisdiction is proper under 42 U.S.C. § 405(g).

Plaintiff raises one issue in his opening brief: whether the ALJ erred in relying on the vocational expert's testimony that Plaintiff is capable of performing light work, including his past relevant work as a cashier, despite his use of a cane to ambulate. For the reasons set forth below, the Court affirms the decision of the Commissioner to deny Plaintiff's application for disability benefits.

---

[1] Kilolo Kijakazi is now the Acting Commissioner of Social Security, and she is automatically substituted as the Defendant in this action. *See* Fed. R. Civ. P. 25(d); 42 U.S.C. § 405(g).

## I.  **BACKGROUND**

Plaintiff first filed an application for Social Security Disability Benefits under Title II of the Social Security Act on June 6, 2016. (Doc. # 14-5 at 186.)[2] Plaintiff alleged a disability onset date of January 1, 2014, due to diabetes, general anxiety disorder, blood clots, asthma, and bursitis. (*Id.*; Doc. # 14-6 at 213.) At the time of his application, Plaintiff was 63 years old. (Doc. # 14-5 at 186.)

Plaintiff's application for disability benefits was first denied on January 4, 2017. (Doc. # 14-3 at 86–87.) Plaintiff filed a written request for a hearing on January 18, 2017. (Doc. # 14-4 at 107.) ALJ Kathleen Laub held a hearing concerning Plaintiff's application on February 26, 2019. (Doc. # 14-2 at 31.) Both Plaintiff and an impartial vocational expert, Amanda Munzer, testified at the hearing. (*Id.*)

On May 2, 2019, the ALJ denied Plaintiff's request for benefits. (*Id.* at 24.) At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity during the period from his alleged onset date of January 1, 2014, through his date last insured of December 31, 2016. (*Id.* at 14.) At step two, the ALJ found that Plaintiff has several severe impairments, including "diabetic peripheral neuropathy, asthma, a history of pulmonary embolism, and status post cheilectomy of the right metatarsophalangeal ("MTPJ") joint." (*Id.* at 15.) At step three, the ALJ concluded that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of impairments listed in the disability regulations. (*Id.* at 17–18.) The ALJ determined that

---

[2] The exhibits filed at Doc. # 14 constitute the Administrative Record in this matter. The Court cites to the docket number of the exhibit (*e.g.*, Doc. # 14-2) and the page number from the Administrative Record (*e.g.*, at 43).

Plaintiff has the residual functional capacity to perform light work with the following abilities and limitations:

> [T]he claimant can never climb ladders, ropes or scaffolds but can occasionally climb ramps or stairs. The claimant can frequently balance. The claimant can occasionally stoop, kneel, crouch and crawl. The claimant can occasionally operate foot controls with the bilateral lower extremities. The claimant requires a cane with which to ambulate. The claimant can tolerate frequent exposure to extreme heat, extreme cold, wetness, humidity, pulmonary irritants, such as fumes, odors, dusts, gases or poor ventilation, occasional exposure to vibration and heavy mechanical machinery (like a jackhammer or tractor) and unprotected heights. The claimant can frequently handle and finger with the bilateral upper extremities.

(*Id.* at 18.)

At step four, the ALJ found that Plaintiff was capable of performing past relevant work as a cashier because "[t]his work did not require the performance of work-related activities precluded by the claimant's residual functional capacity." (*Id.* at 22.) Accordingly, the ALJ concluded that Plaintiff was not disabled under the Social Security Act. (*Id.* at 23.)

Plaintiff requested review of the ALJ's decision. (*Id.* at 7.) On March 30, 2020, the Appeals Council denied Plaintiff's request for review and the ALJ's decision became the final decision of the Commissioner. (*Id.* at 1); *see Blea v. Barnhart*, 466 F.3d 903, 908 (10th Cir. 2006).

Plaintiff initiated the instant action on May 29, 2020, seeking reversal of the ALJ's decision and remand for award of benefits or a new hearing. (Doc. # 1.) He filed his Opening Brief (Doc. # 18) on February 5, 2021. The Commissioner filed a Response Brief (Doc. # 22) on March 26, 2021, and Plaintiff followed with his Reply. (Doc. # 23.)

## II.  LEGAL STANDARDS

When reviewing the Commissioner's decision, the Court is limited to determining "whether the findings are supported by substantial evidence and whether the Secretary applied correct legal standards." *Pacheco v. Sullivan*, 931 F.2d 695, 696 (10th Cir. 1991); *see also* 42 U.S.C. § 405(g) ("The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . ."). The Supreme Court has defined "substantial evidence" as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Consol. Edison Co. of N.Y. v. N.L.R.B.*, 305 U.S. 197, 217 (1938). Substantial evidence "is more than a scintilla, but less than a preponderance." *Campbell v. Bowen*, 822 F.2d 1518, 1521 (10th Cir. 1987). Thus, a decision is not based on substantial evidence "if it is overwhelmed by other evidence in the record." *Wall v. Astrue*, 561 F.3d 1048, 1052 (10th Cir. 2009) (internal quotation marks omitted).

In reviewing the record to make the substantial evidence determination, the Court "may not reweigh the evidence nor substitute [its] judgment for the Secretary's." *Glass v. Shalala*, 43 F.3d 1392, 1395 (10th Cir. 1994). In addition, the Court "may not displace the agency's choice between two fairly conflicting views, even though the [C]ourt would justifiably have made a different choice had the matter been before it *de novo*." *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007) (internal quotation marks and citation omitted). Also, the Court "defer[s] to the ALJ on matters involving the credibility of witnesses." *Glass*, 43 F.3d at 1395.

In addition to the absence of substantial supporting evidence, "[f]ailure to apply the correct legal standard or to provide [the reviewing court] with a sufficient basis to determine that appropriate legal principles have been followed is grounds for reversal." *Byron v. Heckler*, 742 F.2d 1232, 1235 (10th Cir. 1984) (quoting *Smith v. Heckler*, 707 F.2d 1284, 1285 (11th Cir. 1983)); *see also Thompson v. Sullivan*, 987 F.2d 1482, 1487 (10th Cir. 1993). "There are specific rules of law that must be followed in deciding whether evidence is substantial in these disability cases." *Frey v. Bowen*, 816 F.2d 508, 512 (10th Cir. 1987).

However, not every error in evaluating evidence or applying the correct legal standard warrants reversal or remand. "Courts may not reverse and remand for failure to comply with a regulation without first considering whether the error was harmless." *Bornette v. Barnhart*, 466 F. Supp. 2d 811, 816 (E.D. Tex. 2006); *see also Allen v. Barnhart*, 357 F.3d 1140, 1145 (10th Cir. 2004) (recognizing that the Tenth Circuit has "specifically applied [the principle of harmless error] in social security disability cases" and citing cases). The standard for harmless error requires a finding that, considering the evidence before the ALJ, the Court can "confidently say that no reasonable administrative factfinder, following the correct analysis, could have resolved the factual matter in any other way." *Allen*, 357 F.3d at 1145. Harmless error exists where it is "inconceivable" that a different administrative conclusion would have been reached absent the error. *Frank v. Barnhart*, 326 F.3d 618, 622 (5th Cir. 2003).

### III. DISCUSSION

Plaintiff raises one issue before this Court: whether the ALJ erred in relying on the vocational expert's testimony as substantial evidence in determining that Plaintiff was capable of performing his past relevant work as a cashier despite requiring the use of a cane to ambulate. (Doc. # 18 at 4.) Plaintiff argues that use of a cane fundamentally conflicts with the definition of "light work" and the DOT description of Cashier II. (*Id.* at 5–6.) As such, Plaintiff contends that the ALJ committed reversable error by failing to investigate and elicit a reasonable explanation for this alleged conflict in the vocational expert's testimony. (*Id.* at 6.)

### A. RELEVANT EVIDENCE BEFORE THE ALJ

In evaluating Plaintiff's impairments and residual functional capacity ("RFC"), the ALJ thoroughly reviewed evidence relating to several of Plaintiff's conditions, including, but not limited to, diabetes, asthma, hypertension, tinnitus, obesity, anxiety, and depression. *See* (Doc. # 14-2 at 14–17.) The ALJ determined that Plaintiff's diabetic peripheral neuropathy, asthma, history of pulmonary embolism, and status post cheilectomy of the right MTPJ joint significantly limit Plaintiff's ability to perform basic work activities as required by SSR 85-28 and therefore constitute severe impairments. (*Id.* at 15); *see* SSR 85-28, 1985 WL 56856. The ALJ further determined that several of Plaintiff's diagnoses and alleged impairments cause no more than "mild" limitation and are therefore non-severe, including hypertension, hyperlipidemia, obstructive sleep apnea, nicotine dependence, obesity, tremor, tinnitus, back pain, and anxiety and depression. (*Id.* at 15–17.)

Plaintiff does not challenge any of these conclusions, nor does Plaintiff object to the ALJ's evaluation of the medical evidence with respect to any of Plaintiff's medical conditions. Having thoroughly reviewed the administrative record, the Court is satisfied that the ALJ's findings and conclusions with respect to Plaintiff's impairments are supported by substantial evidence. Accordingly, the Court will confine its analysis to Plaintiff's sole issue on appeal and address only the evidence relating to Plaintiff's use of a cane. *See Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1161 (10th Cir. 2012) ("We will consider and discuss only those contentions that have been adequately briefed for review."); *Chambers v. Barnhart*, 359 F.3d 1139, 1142 (10th Cir. 2004) (limiting the scope of appellate review to "the issues the claimant properly preserves in the district court").

1. <u>Medical Evidence</u>

Treatment notes from the Department of Veteran Affairs ("VA"), Cheyenne VA Medical in April 2015 state that Plaintiff had "ongoing problems with significant leg pain post surgery for [blood] clots" which "appear[ed] to be a stable ongoing issue." (Doc. # 14-9 at 555.) At that time, Plaintiff was also experiencing increasing foot pain related to diabetic neuropathy and some increasing knee pain. (*Id.*)

Mental health treatment notes from July 2015 to April 2016 from the VA indicate several times that Plaintiff "walks alone with help of a cane" or "uses a cane to walk" *See* (Doc. # 14-8 at 411, 441, 465; Doc. # 14-9 at 520.) A VA home assessment conducted on July 9, 2015, observed that Plaintiff "uses a cane to walk" and "is not steady when he is walking or climbing up or down stairs." (Doc. # 14-9 at 524.)

7

In February 2016, at a follow up with VA medical for his diabetes and related medical problems, Plaintiff reported that his right hip, left knee, and left foot continued to hurt. (Doc. # 14-8 at 444.) His treating doctor, Milford E. Thieszen, M.D., noted that Plaintiff "has severe hallux rigidus which is probably affecting his gait and aggravating his [pain]" and stated that Plaintiff needed to make an appointment with a podiatrist. (*Id.*)

In May 2016, Plaintiff was examined by podiatrist Monica Schweinberger for reported pain in his big toe joints that had been worsening since 2008. (*Id.* at 389.) Plaintiff also described numbness and weakness in his left leg since undergoing blood clot surgery a few years earlier. (*Id.*) Dr. Schweinberger casted Plaintiff for custom orthotics and gave him instructions for diabetic foot care and how to properly use his prescribed insoles. (*Id.* at 392.) She further noted that if conservative treatment did not adequately control Plaintiff's pain in right MTPJ joint, they could consider fusion of the joint or arthroplasty. (*Id.*) She advised Plaintiff to follow up in 3-4 months. (*Id.*) Plaintiff continued to regularly be prescribed insoles to help with his hallux limitus and diabetic neuropathy. *See, e.g.*, (Doc. # 14-7 at 331.)

In September 2016, Plaintiff received a consultative examination for his application for disability benefits with Carmen Wong, M.D. (Doc. # 14-10 at 607.) Plaintiff reported left knee pain stemming from his blood clot surgery several years prior. (*Id.*) He explained that his pain was "worse with walking up stairs, weightbearing and ambulating on flat surfaces" and "better with sleeping, rest and offloading his left leg." (*Id.*) Plaintiff reported that he used a cane to ambulate for several years since his surgery and took Tylenol for his knee pain. (*Id.* at 607–08.)

Dr. Wong observed that Plaintiff "appeared to sit comfortably during the exam and without pain-mitigating movements," "did not appear uncomfortable getting on and off the examination table," and "arose unaided from a seated position with no discernable discomfort." (*Id.* at 609.) Further, Plaintiff's ambulation "did not appear ataxic or antalgic" and he "was able to stand on his heels or toes"; however, he "deferred walking on heels and toes due to imbalance." (*Id.* at 611.) Plaintiff had a negative straight leg test and mild discernible discomfort within normal ranges and some tenderness in his left knee joint. (*Id.*)

Based on her examination, Dr. Wong assessed that Plaintiff's diagnoses included possible medial compartment osteoarthritis of the left knee and peripheral neuropathy, of the bilateral lower extremities secondary to diabetes. (*Id.* at 612.) Dr. Wong recommended no limitations regarding the number of hours that Plaintiff could be seated, standing, or walking during an 8-hour workday. (*Id.*) Dr. Wong recommended that Plaintiff use an assistance device, such as a cane, for "long distances and uneven terrain" owing to "gait imbalance from diabetic peripheral neuropathy and deep proprioception." (*Id.* at 613.)

2.   Plaintiff's Testimony

At the February 2019 hearing before the ALJ, Plaintiff testified that he was prescribed a cane approximately three years earlier and that he uses it all the time. (Doc. # 14-2 at 42.) He explained that it sometimes felt like his "legs are giving out" and that he had "the shakes." (*Id.*) He said that he had pain in his feet and knees and that he

had "trips and falls going down the stairs." (*Id.* at 43.) When the ALJ asked if his medical treatment for his legs was related only to neuropathy, Plaintiff said he did not know. (*Id.*)

### 3. Vocational Expert Testimony

At the hearing before the ALJ, the vocational expert testified that Plaintiff's past work included the job title "Cashier II, Dot code 211.462.010" which is "in the light exertional category, performed at medium." (*Id.* at 51.) When asked if an individual of the same age, education, and past work experience as Plaintiff, with the same RFC as proposed in the ALJ's written decision (including requiring a cane to ambulate), could perform any of Plaintiff's past work, the vocational expert testified that such an individual could perform the Cashier II position "as generally performed." (*Id.* at 51–52.) The ALJ also asked the vocational expert if any of her responses were inconsistent with information in the Dictionary of Occupational Titles ("DOT") and, if so, to identify such inconsistencies and explain why her opinion differed. (*Id.* at 50–51.) The vocational expert did not identify any inconsistencies.

**B.   ANALYSIS**

Plaintiff argues that the vocational expert's testimony that Plaintiff has the ability to perform light cashier work while using a cane "was factually inaccurate" and "contradicts the DOT." (Doc. # 18 at 5, 6.) Plaintiff contends that the ALJ erred by relying on the vocational expert's testimony as substantial evidence without investigating and resolving the "apparent" conflict between use of a cane and cashier work. (*Id.*)

The regulations provide that a vocational expert or specialist "may offer relevant evidence within his or her expertise or knowledge concerning the physical and mental demands of a claimant's past relevant work, either as the claimant actually performed it or as generally performed in the national economy." 20 C.F.R. § 404.1560(b)(2). Further, a vocational expert "may offer opinion testimony in response to a hypothetical question about whether a person with the physical and mental limitations imposed by the claimant's medical impairment(s) can meet the demands of the claimant's previous work, either as the claimant actually performed it or as generally performed in the national economy." *Id.* Such testimony constitutes substantial evidence supporting an ALJ's conclusion that a plaintiff is not disabled. *See Ellison v. Sullivan*, 929 F.2d 534, 537 (10th Cir. 1990) (crediting as substantial evidence a vocational expert's testimony that "plaintiff had residual functional capacity for a limited range of light work and there were jobs he could perform").

Social Security Ruling 00-4P states that occupational evidence provided by a vocational expert should be consistent with information in the DOT, which the Administration takes notice of as a source of "reliable job information." SSR 00-4P, 2000 WL 1898704, at *2. "When there is an apparent unresolved conflict between [vocational expert] evidence and the DOT, the adjudicator must elicit a reasonable explanation for the conflict before relying on the . . . evidence to support a determination or decision about whether the claimant is disabled." *Id.*; *see Haddock v. Apfel*, 196 F.3d 1084, 1091 (10th Cir. 1999) ("[T]he ALJ must investigate and elicit a reasonable explanation for any conflict between the Dictionary and expert testimony before the ALJ may rely on the

11

expert's testimony as substantial evidence to support a determination of nondisability."). At the hearing, the ALJ has a duty to fully develop the record and inquire as to whether or not there is consistency between the expert testimony and the DOT. SSR 00-4P, 2000 WL 1898704, at *2.

Plaintiff argues that the vocational expert's testimony "contradicts the DOT" because "[t]he use of one's hands in cashier work is extensive in the DOT's job description," which is an ability that "would clearly be impacted by a hand-held assistive device." (Doc. # 18 at 6.) In so arguing, Plaintiff asserts that the DOT ranks manual dexterity "as an important exertional ability in performing cashier work." (*Id.*) Plaintiff avers that the conflict between the manual dexterity required for cashier work and the use of a cane is therefore "apparent" and that the ALJ erred by failing to acknowledge or investigate it. (Doc. # 23 at 3.)

As an initial matter, the Court disagrees with Plaintiff's characterization of the level of manual dexterity required for cashier work. The DOT ranks manual dexterity on a scale from one to five, with one being the most important to a job and five being the least important. For Cashier II, the DOT ranks the manual dexterity required as "Level 4- Lowest 1/3 Excluding Bottom 10%." DOT 211.462-010, 1991 WL 671840. The Court therefore rejects Plaintiff's argument that there is an "apparent" conflict between the DOT and the vocational expert's testimony solely on the basis of the manual dexterity required for a Cashier II position. In addition, the vocational expert testified that an individual with Plaintiff's limitations who requires a cane with which to ambulate could perform cashier work. Upon reviewing the Cashier II DOT description, the Court sees no

apparent conflict with an individual who uses a cane to ambulate. *See, e.g.*, *Moser v. Colvin*, No. 15-cv-01226-NYW, 2016 WL 4766073, at *9 (D. Colo. Sept. 13, 2016) (affirming an ALJ's determination that a claimant who uses a cane could perform light work, including Cashier II, in part because medical evidence did not show that claimant required a cane to stand and the DOT does not address use of a cane for ambulation).

Plaintiff also argues that the vocational expert's testimony is "factually inaccurate" because an individual who uses a cane cannot perform light work.[3] (Doc. # 18 at 5–6.) The only authority Plaintiff provides for this proposition is Social Security Ruling 96-9P, which addresses formulating an RFC for "less than a full range of sedentary work" for individuals who have severe impairments that preclude them from the full range of sedentary work. SSR 96-9P, 1996 WL 374185, at *1. The Ruling provides guidance in considering medically required hand-held assistive devices in those cases. Plaintiff argues that the Ruling's guidance relating to canes and **sedentary** work "begs the serious question as to how [Plaintiff] would be capable of performing light cashier work while using a cane." (Doc. # 18 at 6.) Having reviewed the Ruling, the Court disagrees that it begs any such question. Rather, the Ruling explains that a hand-held assistive

---

[3] Light work is defined by regulation:

> Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities.

20 C.F.R. § 404.1567(d).

13

device does not necessarily erode an individual's ability to work: "For example, if a medically required hand-held assistive device is needed only for prolonged ambulation, walking on uneven terrain, or ascending or descending slopes," a claimant's "occupational base will not ordinarily be significantly eroded." SSR 96-9P, 1996 WL 374185, at *7. In any event, the Court notes that the Ruling provides guidance for individuals able to perform "less than a full range of **sedentary** work" and says nothing about the use of a cane and light work. Plaintiff provides no other applicable authority for his argument. Accordingly, the Court rejects Plaintiff's position that the use of a cane is fundamentally incongruous with the ability to perform light work.

Finally, this Court "will not evaluate in the first instance whether a claimant is able to perform specific jobs." *Thompson v. Colvin*, 551 F. App'x 944, 949 (10th Cir. 2014) (unpublished). Rather, the Court's review is limited to whether the ALJ's factual findings are supported by substantial evidence in the record. *Raymond v. Astrue*, 621 F.3d 1269, 1271 (10th Cir. 2009). The ALJ found that Plaintiff "requires the use of a cane with which to ambulate," which is consistent with the evidence in the administrative record. (Doc. # 14-2 at 18.) The vocational expert then testified that the ability to perform the Cashier II position was consistent with a hypothetical person with Plaintiff's impairments, including his use of a cane to ambulate. (Doc. # 14-2 at 51–52.) Neither the vocational expert nor the ALJ identified any conflict between the vocational expert's testimony and the DOT, and Plaintiff has not established a conflict that the ALJ failed to address. Accordingly, the Court concludes that the ALJ properly relied on the vocational

expert's testimony as substantial evidence supporting her determination that Plaintiff is capable of performing his past work as a Cashier II. *See Ellison*, 929 F.2d at 537.

## IV.   CONCLUSION

For the foregoing reasons, it is ORDERED that the ALJ's denial of disability benefits is AFFIRMED.

DATED:  March 30, 2022

BY THE COURT:

CHRISTINE M. ARGUELLO
United States District Judge